4 U.S. 163
 4 Dall. 163
 1 L.Ed. 783
 Ball
v.
Dennison.
 Supreme Court of Pennsylvania.
 September Term, 1799
 
 1
 THIS was an action brought by the indorsee, against the indorser, of a promissory note for 5000 dollars, drawn by Samuel Emory, on the 26th of December 1795, and payable 65 days after sight. The drawer, failing to pay the note, it was regularly protested, on the 3d of March 1796; and the only question agitated upon the trial, was, whether reasonable notice of the non-payment was given to the indorser, or due diligence employed to give it?
 
 
 2
 The material facts were these: Emory and Dennison had purchased from the managers of the Schuykill canal lottery a number of tickets, for which a note was given to the president, the plaintiff in this action. The purchasers settled their accounts of the speculation, before the note became due, in consequence of which Emory was bound to pay the note; but when it became due, Dennison agreed to continue his indorsement for the accommodation of Emory, though the joint interest had ceased; and the plaintiff, by way of renewal, at the instance of Emory, took the note, on which the present action was instituted. Dennison was not a permanent inhabitant of Philadelphia; but was domiciled at Havre de Grace, in Maryland. He had, however, an agent in Philadelphia, to whom the banks, in consequence of written instructions, delivered the notices of his paper engagements payable there, on which he was drawer (not indorser) during the years 1795, and 1796; and who constantly, for that period, made the necessary payments; nor would he have hesitated (he declared) to pay the present note, if he had been informed by the default of the drawer. It appeared, likewise, that Dennison was, occasionally, in the city of Philadelphia, in the months of February, March, April, May, June, August, and September 1796; and, in the month of May, Emmory informed him of the protest; but, at the same time, declared that he had made preparation to discharge the note. On the other hand, it was proved, that after the default of the drawer, particular and repeated inquiry was made for the indorser by the notary, as well from Emmory as others; that the indorser was not then in Philadelphia, and the notary did not himself know that he had an agent here, for such purposes, though he knew there were transactions of business between him and the person, who is said to have been his agent; that the notary heard Dennison lived at Havre de Grace, but, at the same time, was told, he had gone to the eastward; that as soon as the plaintiff understood that Dennison was in the city (about six weeks, or two months, after the protest) the plaintiff's clerk called on Dennison, mentioned the facts, and demanded payment; when Dennison said, that he had received no part of the proceeds of the lottery tickets; but that he would urge Emmory to discharge the note.
 
 
 3
 The defendant's counsel contended, on these facts, that there was not reasonable notice of the protest of the note, nor due diligence to give it: that, under the circumstances of the case, the defendant was not under a moral obligation to pay the note, and might fairly take advantage of the strict rule of law, according to 1 Dall. Rep. 234. 252. 270. 2 Dall. Rep. 158. 192.: that no notice was given to the indorser till May 1796, though he was occasionally here, before that time, and subsequent to the protest; though he had an agent here; and though he lived in a neighbouring state, to which the post would have carried notice, in the course of a few days: and that actual knowledge of non-payment, is not sufficient to charge an indorser, unless the information is received promptly from the holder, with notice that he looked to the indorser for payment: Kyd on Bills. 79. 1 T. Rep. 167. 5 Burr. 2670. 1 T. Rep. 712.
 
 
 4
 The plaintiff's counsel insisted, that as the private arrangement between Dennison and Emmory, was unknown to the plaintiff, his claim upon the defendant in morality, as well as law, could not be impaired by it; that the law was not controverted, on the authority of the cases cited; but still it left the matter of fact to be ascertained, what was reasonable notice of protest, under all the circumstances of the case? that the first important feature of the case, exhibits the defendant as a non-resident of Philadelphia, a mere transient visitor: that notice sent south to Havre de Grace, when it was known he had gone north, would have been useless and idle: that the notary did not know, and the evidence is, otherwise, uncertain in the instance of the defendant's begin an indorser, that he had any agent in Philadelphia: and that due and diligent inquiry was made for the indorser in Philadelphia, where the consideration arose, and the note was given. As to the cases cited, for the defendant, they are susceptible of answers, easily distinguishing them from the present case. Thus: In 1 Dall. Rep. 234. 270. the bill was kept who years and a half; the indorser lived in Poughkeepsie, only 130 miles distant; he was a man of note, in extensive business, and actually had some transactions with another of the indorsers. In 1 Dall. Rep. 252. the note was protested for non-payment on the 12th of June 1786; on the 5th of July and 23d of August, the plaintiff received partial payments from the drawer; and it was not till after the last date, when the drawer had become embarrassed, that notice was given to the indorser; who, during the whole time, lived and kept a counting house in Philadelphia. In 2 Dall. Rep. 158, both parties lived in Philadelphia; and the jury thought three or four days was not too late to give notice. In 2 Dall. Rep. 192. the bill of exchange was drawn in September 1781, presented and refused acceptance in November 1781, and protested for non-payment in August 1782; but no notice was given to the indorser till the beginning of the year 1790. When the bill was presented, the drawee had funds of the drawer in his hands; but he had paid the amount to the drawer's agent, who died, and whose wife had lost the money.
 
 SHIPPEN, Justice.[1]
 
 5
 The cause depends upon one point, which is a matter of fact. The general law is, that when a promissory note is dishonoured by the drawer, the indorser becomes immediately liable; and the holder is entitled to recover the amount from him, unless he is discharged by the act of the holder, either in giving further time, or credit, to the drawer; or in neglecting to give the indorser due notice of the non-payment. This notice is indispensable: so much so, that it is immaterial. whether the drawer becomes insolvent before the notice, or not. Still, however, what constitutes due notice, is a point to be settled. In England (where it is regarded as a question of law) the rule is strict and positive, that the notice must be given on the next day, if the parties live in the same place; and by the next post, if they live in different places. But in Pennsylvania, it has hitherto been regarded as a matter of fact, to be decided by a jury, under all the circumstances of each case, as it arises. In deciding it, however, the jury will always be governed by a sound and reasonable discretion. They will allow but a short time for giving notice, where the parties reside in the same town; for, six weeks in such a case would certainly be too long; and, for giving notice in different parts of the country, they will bring into the calculation of a reasonable time, the facility of the post, the state of the roads, and the dispersion of the inhabitants, in relation to the post towns.
 
 
 6
 With these prefatory remarks, let us review the circumstances of the present case. The note was duly protested for non-payment. The notary, at the same time, made diligent inquiry after the indorser; particularly from the drawer, who was most likely to possess the necessary information. He heard that the indorser lived at Havre de Grace, but was the gone to the eastward. Proof has, also, been given of Dennison's repeatedly visiting Philadelphia, after the protest; but it is not proved, that the plaintiff was acquainted with the fact; and, without that proof, he cannot be legally charged with laches. It is proved, that J. B. Bond was Dennison's general agent in Philadelphia; but it is not proved, that he was a public, known, agent; nor (which is again essential to affect the plaintiff's claim) that the plaintiff was apprised of the agency. As to the fact, that Dennison lived at Havre de Grace; and as to the argument, that notice ought to be given wherever the indorser lives; it is important to remember, that the commencement of the transaction was in Philadelphia; that the note was dated there; and that all the parties contemplated Philadelphia as the place of payment. Besides, it would interrupt the negotiability of notes, and greatly embarrass the general operations of commercial credit, if an indorser was entitled to notice, on the strict terms suggested, though he lived in the East, or the West, Indies; or though he was a mere itinerant, constantly shifting the place of his abode, and the scene of his business. It is, therefore, an object of leading influence, in the decision of this cause, to consider, whether, under all the circumstances in proof, the plaintiff was bound to inquire for the defendant, beyond the city of Philadelphia? The case of Steinmetz v. Curry, 1 Dall. Rep. 234. 270. ought not to be a guide on the occasion; for, there, the bill was kept by the holder two years and a half, without giving notice to an indorser, who was known to reside constantly at Poughkeepsie, in New-York. But, upon the whole, it appears to the Court, that the plaintiff did make a prompt inquiry for the indorser in the city of Philadelphia; and that the defendant has not sufficiently established those facts, which would have made it incumbent upon him, either to send notice to Havre de Grace; or to serve notice upon the agent in Philadelphia. If the jury concur in the opinion, they will find for the plaintiff; but if they do not, it is their right, and their duty, to find for the defendant.
 
 
 7
 Verdict (delivered without the jury's retiring from the bar) for the plaintiff, 6051 13/100 dollars, and six cents costs.
 
 
 
 [1]
 SHIPPEN, and SMITH, Justices, were the only judges on the bench, at the trial of this cause.